UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JOLETTA HINSON BULL, | ) |
| Plaintiff, | ) |
| v. | ) No.: 3:16-CV-266-TAV-DCP |
| ELISHA WATSON and RANDALL HORNSBY, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This is a pro se prisoner's civil rights complaint filed pursuant to 42 U.S.C. § 1983 [Docs. 1, 6]. Before the Court is Defendants Watson and Hornsby's motion for summary judgment [Doc. 18]. Plaintiff has not filed a response to Defendants' motion for summary judgment, and the time for doing so has now passed. *See* E.D. Tenn. L.R. 7.1(a)(2). For the reasons stated below, the motion for summary judgment [Doc. 18] will be **GRANTED**, and this action will be **DISMISSED**.

**I.  PROCEDURAL BACKGROUND**

Plaintiff originally filed this complaint under 42 U.S.C. § 1983 on May 16, 2016, in the United States District Court for the Middle District of Tennessee [Doc. 1]. On May 23, 2016, the Middle District ordered that Plaintiff's case be transferred to this Court [Doc. 4]. Prior to transfer, the Middle District granted Plaintiff's request to proceed *in forma pauperis*, but did not screen the complaint pursuant to the Prison Litigation Reform Act ("PLRA") [*Id.*]. On July 12, 2016, this Court screened Plaintiff's complaint, and held that

only "Plaintiff's colorable Eighth Amendment medical claims will be allowed to proceed against Defendants Watson and Hornsby" [Doc. 7 p. 6].

Defendants Watson and Hornsby then filed a motion to dismiss and supporting brief, claiming that Plaintiff had failed to state a claim for relief against them in their official capacities [Docs. 11, 12]. On September 7, 2017, the Court granted Defendants Watson and Hornsby's motion to dismiss, and dismissed Plaintiff's claims against them in their official capacities [Doc. 16 p. 4]. Then, on April 26, 2018, Defendants Watson and Hornsby filed a motion for summary judgment, as well as a memorandum in support of their motion [Docs. 18, 19]. Plaintiff subsequently failed to respond to the pending motion for summary judgment. As such, Plaintiff has waived any opposition to this dispositive motion. *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd* 577 F.2d 740 (6th Cir. 1978); E.D. Tenn. L.R. 7.2.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, all facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the

moving party is entitled to judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (internal citation omitted). However, the Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of truth at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Initially, the moving party bears the burden of demonstrating that no genuine issue of material fact exists by either producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). A mere scintilla of evidence is not enough, as there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded; rather, the Court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Stough v. Mayville*

3

*Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). In doing so, the Court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The Court must "intelligently and carefully review the legitimacy of [ ] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id.* at 410. If the Court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, then the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id.* (alteration omitted).

### III. FACTUAL BACKGROUND

The substance of Plaintiff's complaint alleges, in its entirety:

I was incarcerated in Knox County Detention Facility on October 31, 2015 upon release from UT Hospital. I had seventeen (17) broken bones upon arrival at Knox County Detention Facility. My scapula was broken. My spine was broken in three (3) places, seven ribs on the right side of my body were broken and five (5) on the left side of my body were broken. My right femur was broken and a rod was placed from my hip to my right knee to provide stability and strength for the healing process. They made me walk on a severely broken leg causing me to break one of the screws. I was in extensive pain and suffering. They denied me any pain medication and proper housing. They mocked me and made fun of me.

[Doc. 1 p. 5].

In support of their motion for summary judgment, Defendants filed an affidavit from Tammy Strunk ("Strunk"), Chief of Medical Services and Health Services Administrator of the Roger D. Wilson Detention Facility [Doc. 18-1 p. 1]. In her affidavit, Strunk testifies

that "[o]n or about October 31, 2015, [P]laintiff was discharged from UT Hospital to the custody of Knox County's Roger D. Wilson Detention Facility," and had "serious medical needs [including] bilateral pneumothoraxes, closed fracture of body of right scapula, closed fracture of shaft of right femur with routine healing . . . fracture of lumbar spine . . . [and] laceration of scalp and multiple rib fractures" [*Id.* at ¶¶ 9–10]. Further, Strunk states that Knox County jail officials followed hospital discharge orders for Plaintiff's medical care, including requiring Plaintiff to wear a spine brace while sitting upright or walking, and utilizing an incentive spirometer for Plaintiff's rib fracture [*Id.* at ¶¶ 11–13].

Upon arrival to the Roger D. Wilson Detention Facility, Plaintiff was "classified and treated as a handicapped person," and "specially housed in protective custody in the infirmary in order to have a handicap accessible cell" [*Id.* at ¶ 15]. Strunk also testifies that Plaintiff was provided with a walker, and had access to a wheelchair [*Id.* at ¶ 16]. As an exhibit to Strunk's affidavit, Defendants also provide Plaintiff's signed acknowledgement that she was instructed how to obtain medical services at Knox County Corrections Facilities, and that she consented to allow the Corrections Medical Unit "to administer a medical examination and/or treatments as necessary" [*Id.* at 6]. However, Strunk also states that "[o]ccasionally, Plaintiff refused to follow her doctors' discharge treatment and instructions," including "at times, [P]laintiff refused to use her back brace when she walked . . . [and occasionally] refused to use an incentive spirometer to help her lungs heal" [*Id.* at ¶¶ 19, 20]. Further, Strunk testifies that Plaintiff was provided with all prescribed pain medications, and that Plaintiff's treatment plans were followed, including

5

taking Plaintiff to scheduled appointments at doctor's offices outside the detention facility [*Id.* at ¶¶ 21–24].

Although Plaintiff was placed in the "medical pod," due to her injuries, Defendant Strunk states that "[w]ithin approximately 1 week of being incarcerated, Plaintiff began requesting to be moved from the medical pod to the general prison population" [*Id.* at ¶ 25]. Next, Strunk details that Plaintiff then "began asserting that her medical condition had improved sufficiently to take her out of the medical pod" [*Id.* at ¶ 26]. On November 12, 2015, Plaintiff executed a "Release of Liability for Refusal of Medical Treatment," releasing liability for claims due to the refusal of medical treatment, as Plaintiff was "requesting PC status against medical due to not receiving housing in the ward bed" [*Id.* at ¶ 27; p. 7]. Defendants also include Plaintiff's November 17, 2015, medical request as an exhibit in support of their motion, in which Plaintiff claims that she "wish[ed] to sign against medical advice paper accepting all liability in order to come off house alone" [*Id.* at 8]. Lastly, Strunk states that "[o]n or about November 19, 2015, one of [P]laintiff's doctor's instructed: 'Wt Bear As Tolerated[,] Wear TLSO Brace [,] No lifting [,] OK Normal Population with above precautions'" [*Id.* at ¶ 30]. Strunk then claims that Plaintiff was ultimately released from the Roger D. Wilson Detention Facility into the custody of the Tennessee Department of Corrections "[o]n or about December 4, 2015" [*Id.* at ¶ 31].

Additionally, Defendants Hornsby and Watson also filed sworn affidavits in support of their motion for summary judgment [Docs. 18-2, 18-3]. Defendant Hornsby states that he "was a Sergeant supervising 6 buildings of the Roger D. Wilson Detention Facility"

during Plaintiff's incarceration, and that he was not "in any way involved in her medical care and treatment" [Doc. 18-2 at ¶¶ 3–4]. Further, Defendant Hornsby testifies in his affidavit that Plaintiff "never complained to [him] about inadequate or inappropriate medical attention" [*Id.* at ¶ 8]. Defendant Watson states that she was a "Corrections Officer for Knox County" during Plaintiff's incarceration, and, similarly, was not "involved in her medical care and treatment" [Doc. 18-3 at ¶¶ 3–4].

The Court has carefully reviewed the entire record, including those "particular parts of materials in the record" to which Defendants cite in their Motion and accompanying brief. *See* Fed. R. Civ. P. 56(c)(1)(A). The record supports Defendants' recitation of the material facts [*See* Doc. 19 pp. 1–7], and the Court will therefore rely on them as uncontroverted.

## IV. ANALYSIS

A prison authority's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* To prevail on a claim alleging Eighth Amendment violations in the prison medical context, a plaintiff must show that acts or omissions of an individual operating under the color of state law were "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Thus, under the *Estelle* standard, "[a]

constitutional claim for denial of medical care has [both] objective and subjective components." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component of a claim for the denial of medical care requires proof the inmate was suffering from a sufficiently serious medical need such that "he [was] incarcerated under conditions posing a substantial risk of serious harm." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To be sufficiently serious, the medical need must be either (1) obvious to a layperson or (2) supported by medical evidence, like a physician's diagnosis. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)).

The subjective component of a claim for the denial of medical care requires an inmate to show that a prison official possessed a culpable state of mind—one of "deliberate indifference." *Farmer*, 511 U.S. at 834. "Put simply, 'deliberate indifference' to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Johnson v. Karnes,* 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 836). To meet this subjective standard, a plaintiff must establish that the defendant: (1) "perceived the facts from which to infer substantial risk to the prisoner," (2) "did in fact draw the inference," and (3) "then disregarded that risk." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

As set forth above, Defendants Watson and Hornsby present undisputed evidence in support of their motion for summary judgment which demonstrates that they failed to act with deliberate indifference to Plaintiff's serious medical needs. Defendants Watson

and Hornsby's affidavits sets forth sworn testimony that establishes that neither Defendant was involved in Plaintiff's medical care and treatment, and that Plaintiff did not notify either Defendant of any inadequate or inappropriate medical care [Docs. 18-2; 18-3]. Additionally, Plaintiff fails to allege that Defendants Hornsby or Watson "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[d] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (internal citations omitted).

Further, Plaintiff has not set forth evidence that she actually suffered a physical injury or was denied medical care while incarcerated at the Roger D. Wilson Detention Facility. Defendants Watson and Hornsby have set forth undisputed proof through the affidavit of Tammy Strunk that Plaintiff was provided all required medical treatment, that jail officials took all necessary precautions to protect Plaintiff's health, and that Plaintiff was never forced to walk unsupported on her broken leg [Doc. 18-1]. Additionally, Strunk's affidavit details that Plaintiff was provided with a walker and a wheelchair, as well as being housed under medical supervision [*Id.*].

Ultimately, the Court finds that Defendants have met their burden of demonstrating that no disputed issues of fact remain as to Plaintiff's deliberate indifference claims, and that they are entitled to judgment as a matter of law.[1]

---

[1] As the Court finds that sufficient grounds exist to grant Defendants Watson and Hornsby's motion for summary judgment, the Court does not reach the remaining arguments in Defendants' motion, including regarding a potential release of liability and the failure to exhaust administrative remedies.

## V.  CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment [Doc. 18] will be **GRANTED**, and this action will be **DISMISSED**.  The Court hereby **CERTIFIES** that any appeal from this Order would not be taken in good faith.  Thus, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER**.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE